WATER, WASTE & LAND, INC.,
d/b/a WESTEC, Petitioner,

v.

Donald LANHAM; Larry Clark; and
Preferred Income Investors,
L.L.C., Respondents.

No. 97SC199.

Supreme Court of Colorado,
En Banc.

March 9, 1998.

Craig Stirn, Fort Collins, for Petitioner.

Griffith & Beach, Michael L. Griffith, Fort Collins, for Respondent Lanham.

Justice SCOTT delivered the Opinion of the Court.

This case requires us to decide whether the members or managers of a limited liability company (LLC) are excused from personal liability on a contract where the other party to the contract did not have notice that the members or managers were negotiating on

behalf of a limited liability company at the time the contract was made.[1] Because the county court found that the party dealing with the members or managers was unaware that they were acting as agents of a limited liability company when they negotiated the contract, and the evidence in the record supports the county court's findings, we see no legal basis to excuse the agents of the LLC from liability and therefore we reverse the judgment of the district court.

## I.

Water, Waste, & Land, Inc., the petitioner, is a land development and engineering company doing business under the name "Westec." At the time of the events in this case, Donald Lanham and Larry Clark were managers and also members of Preferred Income Investors, L.L.C. (Company or P.I.I.). The Company is a limited liability company organized under the Colorado Limited Liability Company Act, §§ 7–80–101 to –1101, 2 C.R.S. (1997) (the LLC Act).

In March 1995, Clark contacted Westec about the possibility of hiring Westec to perform engineering work in connection with a development project which involved the construction of a fast-food restaurant known as Taco Cabaña. In the course of preliminary discussions, Clark gave his business card to representatives of Westec. The business card included Lanham's address, which was also the address listed as the Company's principal office and place of business in its articles of organization filed with the secretary of state. While the Company's name was not on the business card, the letters "P.I.I." appeared above the address on the card. However, there was no indication as to what the acronym meant or that P.I.I. was a limited liability company.

After further negotiations, an oral agreement was reached concerning Westec's involvement with the Company's restaurant project. Clark instructed Westec to send a written proposal of its work to Lanham and the proposal was sent in April 1995. On August 2, 1995, Westec sent Lanham a form of contract, which Lanham was to execute and return to Westec.[2] Although Westec never received a signed contract, in mid-August it did receive verbal authorization from Clark to begin work. Westec completed the engineering work and sent a bill for $9,183.40 to Lanham. No payments were made on the bill.

Westec filed a claim in county court against Clark and Lanham individually as well as against the Company. At trial, the Company admitted liability for the amount claimed by Westec. The county court entered judgment in favor of Westec. The county court found that: (1) Clark had contacted Westec to do engineering work for Lanham; (2) it was "unknown" to Westec that Lanham had organized the Company as a limited liability company; and (3) the letters "P.I.I." on Clark's business card were insufficient to place Westec on notice that the Company was a limited liability company. Based on its findings, the county court ruled that: (1) Clark was an agent of both Lanham and the Company with "authority to obligate

---

1. The questions presented and framed by petitioner in the petition for certiorari were:

 1. Whether the district court erred in holding that the individual defendant should be dismissed from the action, when the petitioner performed work for the respondent believing, because of representations made by respondent's agent, that the work was being performed for the benefit of the individual and knew nothing of the existence of a limited liability company.

 2. Whether § 7–80–208, 2 C.R.S. (1997), should be interpreted such that an individual is able to claim protection from personal liability for amounts owing for services if that person has established a limited liability company, even though the existence of the limited liability company is not disclosed at the time the services were requested or performed.

 3. Whether the district court erred in determining that the county court should have found that respondent Clark was acting only as an agent for the limited liability company and not for the individual respondent Lanham, and that the contract therefore existed only between the petitioner and the limited liability company.

2. Westec directed all correspondence relating to the restaurant project to Lanham, including a written contract and bills. Both the form of contract and correspondence between the two parties were in Lanham's name and did not refer to the Company. Lanham never signed Westec's proposed written contract, and the parties do not dispute that the oral agreement is the only binding contract in this case.

... Lanham and the Company"; (2) a valid and binding contract existed for the work; (3) Westec "did not have knowledge of any business entity" and only dealt with Clark and Lanham "on a personal basis"; and (4) Westec understood Clark to be Lanham's agent and therefore "Clark is not personally liable." Accordingly, the county court dismissed Clark from the suit, concluding he could not be held personally liable, and entered judgment in the amount of $9,183 against Lanham and the Company. Lanham appealed, seeking review in the Larimer County District Court (district court).

The district court reversed, concluding that "[t]he issue which the court must address is whether the County Court erred in holding Lanham, a member and primary manager of the company, personally liable for a debt of the company." In addressing that issue, the district court found that Westec was placed on notice that it was dealing with a limited liability company based on two factors: (1) the business card containing the letters "P.I.I."; and (2) the notice provision of section 7–80–208, of the LLC Act. Principally in reliance upon the LLC Act's notice provision, section 7–80–208, which provides that the filing of the articles of organization serve as constructive notice of a company's status as a limited liability company, the district court held that "the County Court erred in finding that Westec had no notice that it was dealing with an L.L.C." Contrary to the trial court's findings, the district court held that "evidence presented at trial was uncontradicted that Westec knew it was dealing with a business entity (P.I.I.) and § 7–80–208 imputes notice that the entity was an 'L.L.C.' in addition to any common law presumption of a duty to inquire." In the district court's view, the notice provision, as well as Westec's failure to investigate or request a personal guarantee, relieved Lanham of personal liability for claims against the Company.

### II.

Resolution of the controversy between Westec and Lanham requires us to analyze the relationship between the common law of agency and the reach of our statutes governing managers and members of a limited liability company. However, before doing so, it may prove helpful to first discuss the history and development of limited liability companies and their use in business enterprise.

The limited liability company is a relatively recent innovation in the law governing business entities. Wyoming adopted the first LLC statute in 1977, but the majority of states did not adopt LLC legislation until the 1990s, largely because the tax treatment of such companies was in doubt. *See* 1 Larry E. Ribstein and Robert R. Keatinge, *Ribstein and Keatinge on Limited Liability Companies* §§ 1.06 & 16.02 (1997). These doubts have been largely resolved, and the LLC has become a popular form of business organization because it offers members the limited liability protection of a corporation, together with the single-tier tax treatment of a partnership along with considerable flexibility in management and financing. The ability to avoid two levels of income taxation is an especially attractive feature of organization as a limited liability company. *See id.* §§ 1.03—1.06; 1 Cathy Stricklin Krendl and James R. Krendl, *Colorado Methods of Practice* § 4.1 (1997).

In 1990, our General Assembly adopted the LLC Act, a statute currently codified as amended at sections 7–80–101 through 7–80–1101, 2 C.R.S. (1997), making Colorado the third state, behind Wyoming and Florida, to do so.[3] Unlike a number of other states, where LLC statutes were based on a model act drafted by the National Conference of Commissioners on Uniform State Laws, Colorado's LLC Act combined features of the state's existing limited partnership and corporation statutes. *See* John R. Maxfield et al., *Colorado Enacts Limited Liability Company Legislation,* 19 Colo. Law. 1029 (June 1990). In any case, the LLC Act includes the same basic features of limited liability, single-tier tax treatment, and planning flexibility shared by the Uniform Limited Liability Company Act and LLC legislation adopted by other states.

**3.** The LLC Act was amended in 1993, 1994, and 1997.

Colorado passed the LLC Act into law for several reasons, but the importance of the tax benefits derived from the use of the LLC should not be overlooked. "For ... the drafters of [the] very early LLC statutes, securing the promised federal tax benefits was the paramount drafting concern." Dale A. Oesterle, *Subcurrents in LLC Statutes: Limiting the Discretion of State Courts to Restructure the Internal Affairs of Small Business,* 66 Univ. Colo. L.Rev. 881, 883. *See also* William J. Carney, *Limited Liability Companies: Origins and Antecedents,* 66 Univ. Colo. L.Rev. 855, 858 (IRS Revenue Ruling 88-76 (Rev. Rul. 88-76, 1988-2 C.B. 361), which provided that a Wyoming LLC could be classified as a partnership for tax purposes, "opened the floodgates and LLC statutes have now been adopted in nearly all the states"). Thus, it is clear that the "primary force of LLC statutes" has been to create a business entity that will meet the federal requirements for pass-through tax treatment. Robert B. Thompson *The Taming of Limited Liability Companies,* 66 Univ. Colo. L Rev. 921, 930.

## III.

### A.

The district court interpreted the LLC Act's notice provision, *see* § 7-80-208, as putting Westec on constructive notice of Lanham's agency relationship with the Company. In essence, this course of analysis assumed that the LLC Act displaced certain common law agency doctrines, at least insofar as these doctrines otherwise would be applicable to suits by third parties seeking to hold the agents of a limited liability company liable for their personal actions as agents.

We hold, however, that the statutory notice provision applies only where a third party seeks to impose liability on an LLC's members or managers simply due to their status as members or managers of the LLC. When a third party sues a manager or member of an LLC under an agency theory, the principles of agency law apply notwithstanding the LLC Act's statutory notice rules.

### B.

Under the common law of agency, an agent is liable on a contract entered on behalf of a principal if the principal is not fully disclosed. In other words, an agent who negotiates a contract with a third party can be sued for any breach of the contract unless the agent discloses both the fact that he or she is acting on behalf of a principal *and* the identity of the principal. As a leading treatise explains:

> If both the existence and identity of the agent's principal are fully disclosed to the other party, the agent does not become a party to any contract which he negotiates.... But where the principal is partially disclosed (i.e. the existence of a principal is known but his identity is not), it is usually inferred that the agent is a party to the contract.

Harold Gill Reuschlein and William A. Gregory, *The Law of Agency and Partnership* § 118 (2d ed.1990).

Other scholars agree that under the common law of agency, the duty to disclose the identity as well as the existence of the principal lies with the agent:

> It is not sufficient that the third party has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal. The duty of disclosure clearly lies with the agent alone; the third party with whom the agent deals has no duty to discover the existence of an agency or ... the identity of the principal.

3A James Solheim and Kenneth Elkins, *Fletcher Cyclopedia of the Law of Private Corporations* § 1120 (1994 revised volume).

This somewhat counterintuitive proposition—that an agent is liable even when the third party knows that the agent is acting on behalf of an unidentified principal—has been recognized as sound by the courts of this state, and it is a well established rule under the common law. *See Fink v. Montgomery Elevator Co. of Colorado,* 161 Colo. 342, 347, 421 P.2d 735, 737 (1966) (agent who negotiates contract "is not liable ... when he has given notice to the third party that there is a principal for whom he acts and also notice of

the name or identity of the principal") (citing *Condit v. Merritt Printing & Stationery Co.,* 67 Colo. 185, 184 P. 381 (1919); *Charles Nelson Co. v. Morton,* 106 Cal.App. 144, 288 P. 845 (1930); *Austin, Nichols & Co., Inc. v. Gross,* 98 Conn. 782, 120 A. 596 (1923); 3 C.J.S. Agency § 216(c); 2 Am.Jur., Agency, § 241. *See also Flatiron Paving Co. v. Wilkin,* 725 P.2d 103, 106 (Colo.App.1986); *Hott v. Tillotson–Lewis Constr. Co.,* 682 P.2d 1220, 1222 (Colo.App.1983); *accord Jensen v. Alaska Valuation Serv., Inc.,* 688 P.2d 161, 162–63 (Alaska 1984); *Rafner v. Toplis & Harding, Inc.,* 25 A.D.2d 826, 269 N.Y.S.2d 661, 662 (N.Y.App.Div.1966).) Thus, an agent is liable on contracts negotiated on behalf of a "partially disclosed" principal; that is, a principal whose existence—but not identity—is known to the other party.

### C.

 Whether a principal is partially or completely disclosed is a question of fact. *Accord Connecticut Limousine Serv., Inc. v. Powers,* 7 Conn.App. 398, 508 A.2d 836, 839 (1986); *Weiss v. Anderson,* 341 N.W.2d 367, 371 (N.D.1983); *Crown Controls, Inc. v. Smiley,* 47 Wash.App. 832, 737 P.2d 709, 713 (1987). On appeal from the county court, the district court had the power to find the facts independently by ordering a trial de novo. *See* § 13–6–310(2), 5 C.R.S. (1997). Instead, the district court exercised its authority to decide the case based on the record developed below. Having so decided, it was bound to accept the facts as found by the county court and its review was limited to the sufficiency of the evidence. *See People v. Gallegos,* 188 Colo. 245, 248–49, 533 P.2d 1140, 1141–42 (1975); *People v. Williams,* 172 Colo. 434, 438–39, 473 P.2d 982, 983–84 (1970).

 These precepts, then, lead us to conclude that the district court erred in substituting its own factual determinations for the findings of the county court. If the district court had held a trial de novo, its conclusion that the letters "P.I.I." on Clark's business card sufficiently alerted Westec's representatives to the fact of Clark's agency relationship with the Company and to the Company's identity would be entitled to deference if supported by evidence in the rec-

ord. However, we see the evidence as sufficient to support the county court's finding to the contrary. Indeed, neither the business card nor the unsigned contract documents, both of which are of obvious significance in evaluating whether Westec knew the identity of the entity represented by Clark and Lanham, are in the record before us. We are, therefore, bound to accept the county court's finding that Westec did not know Clark was acting as an agent for the Company or that the letters "P.I.I." stood for "Preferred Income Investors," a limited liability company registered under Colorado law. For the same reason, the district court erred in concluding that Clark was not acting as Lanham's agent. The trial record was sufficient to support the county court's finding that Clark was an agent for Lanham and this conclusion should not have been disturbed by the district court.

### D.

In light of the partially disclosed principal doctrine, the county court's determination that Clark and Lanham failed to disclose the existence as well as the identity of the limited liability company they represented is dispositive under the common law of agency. Still, if the General Assembly has altered the common law rules applicable to this case by adopting the LLC Act, then these rules must yield in favor of the statute. We conclude, however, that the LLC Act's notice provision was not intended to alter the partially disclosed principal doctrine.

Section 7–80–208, C.R.S. (1997) states:

The fact that the articles of organization are on file in the office of the secretary of state is notice that the limited liability company is a limited liability company and is notice of all other facts set forth therein which are required to be set forth in the articles of organization.

 In order to relieve Lanham of liability, this provision would have to be read to establish a conclusive presumption that a third party who deals with the agent of a limited liability company always has constructive notice of the existence of the agent's principal. We are not persuaded

that the statute can bear such an interpretation.

■ Such a construction exaggerates the plain meaning of the language in the statute. Section 7–80–208 could be read to state that third parties who deal with a limited liability company are always on constructive notice of the company's limited liability status, without regard to whether any part of the company's name or even the fact of its existence has been disclosed. However, an equally plausible interpretation of the words used in the statute is that once the limited liability company's name is known to the third party, constructive notice of the company's limited liability status has been given, as well as the fact that managers and members will not be liable simply due to their status as managers or members.

Moreover, the broad interpretation urged by Lanham would be an invitation to fraud, because it would leave the agent of a limited liability company free to mislead third parties into the belief that the agent would bear personal financial responsibility under any contract, when in fact, recovery would be limited to the assets of a limited liability company not known to the third party at the time the contract was made. While Westec has not alleged that Clark or Lanham deliberately tried to conceal the Company's identity or status as a limited liability company, Lanham's construction would open the door to sharp practices and outright fraud. We may presume that in adopting section 7–80–208, the General Assembly did not intend to create a safe harbor for deceit. *See City of Westminster v. Dogan Constr. Co., Inc.*, 930 P.2d 585 (Colo.1997) (statutory interpretation leading to absurd results is to be avoided); *McClellan v. Meyer*, 900 P.2d 24 (Colo.1995) (same); *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991) (same). For this reason alone, a broad reading of the notice provision would be suspect.

■ In addition, statutes in derogation of the common law are to be strictly construed. *See Peters v. Smuggler–Durant Min. Corp.*, 930 P.2d 575 (Colo.1997); *Leader Federal Bank for Savings v. Saunders*, 929 P.2d 1343 (Colo.1997); *Gleason v. Becker–Johnson Assocs., Inc.*, 916 P.2d 662 (Colo.App.1996). For the reasons outlined above, the interpretation urged by Lanham would be a radical departure from the settled rules of agency under the common law. If the legislature had intended a departure of such magnitude, its desires would have been expressed more clearly.

■ Other LLC Act provisions reinforce the conclusion that the legislature did not intend the notice language of section 7–80–208 to relieve the agent of a limited liability company of the duty to disclose its identity in order to avoid personal liability. For example, section 7–80–201(1), 2 C.R.S. (1997), requires limited liability companies to use the words "Limited Liability Company" or the initials "LLC" as part of their names, implying that the legislature intended to compel any entity seeking to claim the benefits of the LLC Act to identify itself clearly as a limited liability company. By way of further support for our conclusion, section 7–80–107, 2 C.R.S. (1997), provides two bases of individual liability for members: (1) for "alleged improper actions," and (2) "the failure of a limited liability company to observe the formalities or requirements relating to the management of its business and affairs when coupled with some other wrongful conduct."

As one commentator opined:

> It would be an unwarranted stretch to say that these laws intend to extend the insulation of limited liability beyond that traditionally provided by the corporate form. That means that participants in closely held enterprises will continue to be liable for their acts taken in the entity's name that are wrongful or violate regulatory provisions either under agency law or by a court piercing the entity's veil.

Thompson, *supra* at 945.

Lanham received from Westec a form of contract demonstrating Westec's assumption that Lanham was the principal. At that point, he could have clarified his relationship to the Company. He did not do so. Hence, even if we were sympathetic to Lanham's plight, he had within his control the means to clearly state to Westec and the world that he was acting only for the limited liability company. Moreover, we must avoid straying from long established legal precepts and in-

serting uncertainty into accepted rules that govern business relationships.

In sum, then, section 7–80–208 places third parties on constructive notice that a fully identified company—that is, identified by a name such as "Preferred Income Investors, LLC," or the like—is a limited liability company provided that its articles of organization have been filed with the secretary of state. Section 7–80–208 is of little force, however, in determining whether a limited liability company's agent is personally liable on the theory that the agent has failed to disclose the identity of the company.

## IV.

■ Under our interpretation, section 7–80–208 still offers significant protection to the members of a limited liability company. The notice provision protects the members from suit based on their *status* as members, as opposed to their *acts* as agents of the corporate entity.[4] If a third party such as Westec had tried to pierce the corporate veil to hold Clark and Lanham personally responsible for the Company's contractual debt based on the fact that they were members of the LLC, section 7–80–208 would protect them from liability. The distinction between the use of an agency theory and the doctrine of piercing the corporate or limited liability company[5] veil is significant. As one treatise explains:

> The undisclosed principal theory is a rule of law and applies regardless of a defendant's intent to engage in wrongful conduct; however, the doctrine of piercing the corporate veil is based in equity so that a failure to disclose must coexist with wrongful conduct or improper purpose or intent for the latter theory to apply and render personal liability.

**4.** By our holding today, we by no means alter the import or reach of sections 7–80–208 and 7–80–705, 2 C.R.S. (1997). Both sections of our LLC Act provide protection to members and managers. Section 7–80–705 provides:

**Liability of members and managers.** Members and managers of limited liability companies are not liable under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company.

3A James Solheim and Kenneth Elkins, *Fletcher Cyclopedia of the Law of Private Corporations* § 1120 (1994 revised edition).

## V.

■ For these reasons, we conclude that where an agent fails to disclose either the fact that he is acting on behalf of a principal or the identity of the principal, the notice provision of our LLC Act, section 7–80–208, cannot relieve the agent of liability to a third party. When a third party deals with an agent acting on behalf of a limited liability company, the existence and identity of which has been disclosed, the third party is conclusively presumed to know that the entity is a limited liability company and not a partnership or some other type of business organization. Where the third party does not know the identity of the principal entity, however, the situation is fundamentally different because the third party is without notice and the law does not contemplate that he has any way of finding the relevant records.

■ If Clark or Lanham had told Westec's representatives that they were acting on behalf of an entity known as "Preferred Income Investors, LLC" the failure to disclose the fact that the entity was a limited liability company would be irrelevant by virtue of the statute, which provides that the articles of organization operate as constructive notice of the company's limited liability form. The county court, however, found that Lanham and Clark did not identify Preferred Income Investors, LLC, as the principal in the transaction. The "missing link" between the limited disclosure made by Clark and the protection of the notice statute was the failure to state that "P.I.I.," the Company, stood for "Preferred Income Investors, *LLC*."

Hence, we do not diminish the fact that assuming the articles of organization are filed, a member or manager "will not be liable simply due to their status" as member or manager. *See* Krendl & Krendl, *supra,* § 4.9.

**5.** Section 7–80–107 provides for resort to "the case law which interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law."

Accordingly, the judgment of the district court is reversed and this case is remanded to that court with instructions that it reinstate the judgment of the county court.

