SHEFFIELD SERVICES COMPANY, a Colorado limited liability company, and Sheffield Country Estates, a Colorado limited liability company, Plaintiffs–Appellants,

v.

Charles A. TROWBRIDGE and Roy W. Mason, Defendants–Appellees.

No. 08CA0059.

Colorado Court of Appeals, Div. IV.

May 28, 2009.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

 

Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P., John R. Chase, Thomas H. Bolmstrom, Denver, Colorado, for Plaintiff–Appellant.

Head & Associates, P.C., John F. Head, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge HAWTHORNE.

Plaintiff, Sheffield Services Company, LLC (Sheffield), appeals the trial court's amended order dismissing its "piercing the corporate veil" and wrongful attempt to deplete assets claims against defendant Charles A. Trowbridge, and its "negligent misrepresentation/nondisclosure" claim against Trowbridge and co-defendant Roy W. Mason. We affirm in part, vacate in part, and remand with directions.

### I. Facts and Procedural Background

Trowbridge and Mason co-managed Colfax Industrial, LLC (Colfax) and Villas Ventures, LLC (Villas) (collectively LLCs). Each LLC owned residential lots in a subdivision in the City and County of Broomfield that it intended to develop.

In April 1998, Colfax entered into a subdivision agreement with Broomfield. The agreement required the LLCs to complete specific landscaping and infrastructure improvements to receive necessary building permits. When the LLCs did not complete this work, Broomfield declared a breach of the agreement.

Later, on behalf of each LLC, Trowbridge negotiated a separate purchase and sale contract with Sheffield to sell it the lots owned by the LLCs. Both contracts provided that each LLC remained responsible for completing the subdivision agreement's requirements.

Prior to closing on either contract, Sheffield was aware that the LLCs had not completed the improvements. Nevertheless, Sheffield closed on the contracts.

After the Villas closing but before the Colfax closing, Trowbridge and Mason received a letter from Broomfield explaining that it would withhold building permits if the LLCs failed to comply with the subdivision agree-

ment. Trowbridge and Mason did not disclose to Sheffield, prior to the Colfax closing, either the contents of the letter or the LLCs' continuing noncompliance with the subdivision agreement.

After the Colfax closing, Sheffield learned of Broomfield's letter. To mitigate its losses, Sheffield assumed the LLCs' obligations under the subdivision agreement. Sheffield then filed this action against the LLCs, Trowbridge, and Mason, asserting four claims for relief: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) negligent misrepresentation/nondisclosure, and (4) wrongful attempt to deplete the LLCs' assets.

The trial court entered judgment against the LLCs jointly and severally on Sheffield's breach of contract and breach of implied covenant of good faith and fair dealing claims (collectively breach of contract claims), and dismissed all remaining claims.

Sheffield now appeals the trial court's order dismissing its piercing the corporate veil claim, which the court concluded had been tried by consent; its wrongful attempt to deplete assets claim against Trowbridge; and its nondisclosure/negligent misrepresentation claim against both Trowbridge and Mason. Because Sheffield concedes that Mason's personal liability is limited to its negligent misrepresentation/nondisclosure claim discussed in Part IV below, we address only Trowbridge's personal liability in Part II. And, because the court made no findings as to Trowbridge's status as a member or manager of Villas, we address his personal liability only as it relates to Colfax, and remand to the trial court to determine his status as to Villas.

## II. Holding LLC Manager Personally Liable

Sheffield contends the trial court erred in relying on section 7–80–107(1), C.R.S.2008, which recognizes personal liability of members of a limited liability company under certain circumstances, to dismiss its claim against Trowbridge because he was not a member of Colfax. We agree.

Initially, we consider and reject Trowbridge's assertions that (1) no veil piercing claim can be considered in this case because Sheffield's complaint did not allege this theory, and thus he was not put on notice to defend against this claim until Sheffield's closing argument; and (2) the trial court abused its discretion in considering this claim because it was not tried by consent of the parties.

In general, an appellee must file a cross-appeal for an appellate court to consider an alleged error of the trial court which prejudiced the appellee. *Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983, 989 (Colo.1987). However, an appellee, such as Trowbridge, who prevailed in the trial court on an issue may, without filing a notice of cross-appeal, raise arguments to support the judgment that would not increase his or her rights under the judgment. *Fonden v. U.S. Home Corp.*, 85 P.3d 600, 601–02 (Colo.App.2003).

In Colorado, the claim's substance rather than the appellation applied to the pleading by the litigant controls. *LaFond v. Basham*, 683 P.2d 367, 369 (Colo.App.1984). Therefore, a pleading need only serve notice of the claim asserted. *Id.* If the substantive law provides relief on any theory given the facts that have been alleged, the claim should proceed to judgment. *Id.*

Here, the pleadings put Trowbridge on notice that Sheffield sought to hold him personally liable. The complaint sufficiently identifies the transactions involved in this case and states that "the individual defendants are named in their individual capacities." It alleges that Trowbridge "participated in the torts through direct involvement in the wrongful conduct of the [LLCs], including specific authorization, direction, active participation, or cooperation in the wrongful conduct that is alleged in this complaint." It also alleges Trowbridge engaged in wrongful transfers of distributions and income he received from the LLCs to others despite the LLCs' existing obligations to Sheffield.

We agree with the trial court that the complaint need not expressly state that Sheffield sought judgment against Trowbridge

for the LLCs' breaches of contract based on a veil piercing theory. *See Eliminator, Inc. v. 4700 Holly Corp.*, 681 P.2d 536, 539 (Colo. App.1984) (theory of the pleader is not important; all that is required is that the complaint be sufficiently broad to identify the transactions and inform defendant of the general nature of the action). In addition, because Trowbridge did not object to the court admitting Sheffield's exhibits that related solely to the issue of personal liability and did present documentary evidence concerning the same issue, he impliedly consented to trial on that issue. *See First Nat'l Bank v. Hastings*, 7 Colo.App. 129, 133, 42 P. 691, 692 (1895); *see also Carlson v. Bain*, 116 Colo. 526, 529, 182 P.2d 909, 911 (1947) (no amendment of complaint to conform to evidence is necessary where defendant does not attack sufficiency of complaint and does not object to evidence).

Accordingly, the trial court did not abuse its discretion in concluding that Trowbridge's personal liability was tried by consent of the parties. *See* C.R.C.P. 15(b); *see also Anderson v. Dunton Mgmt. Co.*, 865 P.2d 887, 891 (Colo.App.1993) (trial court did not abuse its discretion by allowing plaintiff to proceed against defendant on a theory of respondeat superior after the conclusion of trial because the evidence presented, proposed jury instructions, and conference during trial put defendant on notice of that theory).

Thus, we turn to Sheffield's argument on appeal that it is entitled to pierce the LLC veil and hold Trowbridge personally liable for the improper actions of Colfax.

## A. Effect of Section 7–80–107(1)

The trial court determined that section 7–80–107(1) prohibited it from applying the common law doctrine of piercing the corporate veil to impose personal liability on Trowbridge because, although he was a manager, he was not a member of Colfax. Sheffield contends that the trial court erred because it relied on legislative silence to reach a result inconsistent with longstanding equitable jurisprudence on the doctrine of piercing the corporate veil. We agree that the trial court misconstrued section 7–80–107(1) because the General Assembly did not expressly, or by clear implication, manifest an intent to prohibit courts from using the common law piercing the corporate veil doctrine to hold an LLC manager personally liable for the LLC's improper actions.

## 1. Standard of Review

We review de novo statutory interpretation. *Lauck v. E–470 Pub. Highway Auth.*, 187 P.3d 1148, 1150 (Colo.App.2008). When construing statutes, our primary duty is to give effect to the intent of the legislature, looking first to the statute's plain language. *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 979 (Colo.App.2007).

If a statute is clear and unambiguous on its face, we need not look beyond the plain language and must apply the statute as written. *Id.* However, we should avoid a statutory construction that leads to an absurd result. *Regional Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996).

## 2. Analysis

In 1990, the General Assembly enacted the Colorado Limited Liability Company Act, becoming the third state after Wyoming and Florida, to adopt such legislation. *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1000 (Colo.1998). In addition to favorable tax treatment and flexibility in management and financing, a limited liability company formed under the Act offers members and managers the limited liability protection of a corporation. § 7–80–705, C.R.S.2008; *Water, Waste & Land, Inc.*, 955 P.2d at 1000.

However, section 7–80–107(1) of the Act addresses the "application of corporation case law to set aside limited liability" and provides:

In any case in which a party seeks to hold the *members* of a limited liability company personally responsible for the alleged improper actions of the limited liability company, the court shall apply the case law which interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law.

(Emphasis added.) Section 7–80–107 is the only section of the Act that addresses applying the common law principle of piercing the corporate veil in the LLC context.

 Here, the trial court's analysis assumed that section 7–80–107(1) displaced the common law piercing the corporate veil doctrine, at least insofar as it can be applied in actions by third parties seeking to hold an LLC manager personally liable for the LLC's improper actions. We disagree because section 7–80–107(1) does not expressly preclude a court from applying the common law doctrine to hold a manager personally liable for an LLC's alleged improper actions. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 78 (Colo.1998) (the creation of a statutory remedy does not bar preexisting common law rights of action in the absence of clear legislative intent to negate the common law right); *see also Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 816–17 (Colo. App.2007) (quoting *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004)) ("[W]here the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed.").

To construe section 7–80–107(1) as precluding application of this common law doctrine to LLC managers, as Trowbridge urges, would open the door to fraud. We presume that in adopting section 7–80–107(1), the General Assembly did not intend to create a safe harbor for LLC managers to perpetrate fraud and deceit. *See Water, Waste & Land, Inc.,* 955 P.2d at 1003 (it is presumed the General Assembly did not intend to create a safe harbor for deceit in adopting section 7–80–208, C.R.S.2008).

In addition, to so construe section 7–80–107(1) would be inconsistent with the established common law rule that the doctrine may be applied if equity so requires. *La-Fond,* 683 P.2d at 369 (if adherence to the corporate fiction would promote injustice, protect fraud, defeat a legitimate claim, or defend crime, the invocation of equitable principles for the imposition of personal liability may occur).

Therefore, we conclude that the plain language of section 7–80–107(1) does not prohibit a court from applying the equitable common law doctrine of piercing the corporate veil to hold an LLC manager personally liable for the LLC's improper actions. Having so concluded, we now examine whether, absent a statutory restriction, the common law piercing doctrine applies to LLC managers, a question of first impression in Colorado.

### B. Extending Common Law Piercing to an LLC Manager

Because the common law doctrine of piercing the corporate veil is most fully developed in cases concerning corporate shareholders, we begin by examining those cases.

 Piercing the corporate veil is an equitable, common law doctrine that penetrates the corporate veil of limited liability to impose liability on individual shareholders for the corporation's obligations. *In re Phillips,* 139 P.3d 639, 644 (Colo.2006). Its application is appropriate when a corporation is merely a corporate shareholder's alter ego, and the shareholder uses the corporate structure to perpetrate a wrong. *Id.*

 A corporation is a shareholder's alter ego when it is a "mere instrumentality for the transaction of the shareholder['s] own affairs, and there is such a unity of interest in ownership that the separate personalities of the corporation and the [shareholder] no longer exist." *Id.* (quoting *Krystkowiak v. W.O. Brisben Cos.,* 90 P.3d 859, 867 n. 7 (Colo.2004)).

 Courts consider various factors in identifying such a unity of interest in ownership so as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, including whether (1) the corporation is operated as a distinct business entity, (2) assets and funds are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for

noncorporate purposes. *In re Phillips,* 139 P.3d at 644 (citing *Leonard v. McMorris,* 63 P.3d 323, 330 (Colo.2003)).

After finding an alter ego relationship, the court must determine whether justice requires recognizing the relationship's substance because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *In re Phillips,* 139 P.3d at 644 (quoting *Contractors Heating & Supply Co. v. Scherb,* 163 Colo. 584, 588, 432 P.2d 237, 239 (1967)).

Last, the court must evaluate whether disregarding the corporate form and holding the shareholder personally liable for the corporation's acts will lead to an equitable result. *In re Phillips,* 139 P.3d at 644 (citing *Water, Waste & Land, Inc.,* 955 P.2d at 1004). The claimant seeking to pierce the corporate veil must show by clear and convincing evidence that each consideration above has been met. *In re Phillips,* 139 P.3d at 644 (citing *Contractors Heating & Supply Co.,* 163 Colo. at 588, 432 P.2d at 239).

In *LaFond v. Basham,* a division of this court extended the piercing the corporate veil doctrine beyond corporate shareholders by concluding that a corporate entity may be disregarded and corporate directors held personally liable if equity so requires. The division reasoned that:

> If adherence to the corporate fiction would promote injustice, protect fraud, defeat a legitimate claim, or defend crime, the invocation of equitable principles for the imposition of personal liability may occur.
>
> . . . .
>
> [And] to allow a director to hide behind the cloak of the corporation would promote injustice in that it would allow the actions of a director who used assets of a corporation for his personal gain to defeat the valid claim of a creditor.

*LaFond,* 683 P.2d at 369–70.

We perceive no basis for declining to extend this reasoning to impose personal liability on LLC managers. *See Water, Waste & Land, Inc.,* 955 P.2d at 1003 (quoting Robert B. Thompson, *The Taming of Limited Liability Companies,* 66 U. Colo. L.Rev.

921, 945 (1995): "It would be an unwarranted stretch to say that these [limited liability company statutes] intend to extend the insulation of limited liability beyond that traditionally provided by the corporate form. That means that participants in closely held enterprises will continue to be liable for their acts taken in the entity's name that are wrongful or violate regulatory provisions either under agency law or by a court piercing the entity's veil.").

Other courts have recognized that LLC managers are similar to corporate officers or directors and that no reason exists in law or equity for treating an LLC differently from a corporation when considering whether to disregard the legal entity. *See Kaycee Land & Livestock v. Flahive,* 46 P.3d 323, 327, 329 (Wyo.2002) ("[I]f members *and officers* of an LLC fail to treat it as a separate entity . . . , they should not enjoy immunity from individual liability for the LLC's acts. . . . No reason exists in law or equity for treating an LLC differently than a corporation when considering whether to disregard the legal entity." (emphasis added) ); *Roth v. Voodoo BBQ, LLC,* 964 So.2d 1095, 1097 n. 3 (La.Ct. App.2007) (manager of an LLC is similar to an officer or director of a corporation).

Whether the conduct in question is that of a corporate director, as in *LaFond,* or an LLC manager, as in this case, the injustice wrought by adherence to the corporate or LLC fiction is the same: the director's or manager's actions in using corporate or LLC assets for personal gain would defeat a creditor's valid claim. Comparing the trial court's findings in *LaFond* with those of the trial court here supports this conclusion.

In *LaFond,* the division relied on the trial court's findings that the defendant, although not a shareholder of the involved corporations, was a board of directors member and an officer, whereby he (1) clearly dictated all policy and activity for both corporations; (2) ran the corporations, alone determined when he would draw money from them, when he would lend money to them, how and when the money would be repaid to him, and when the corporations would rent office space in a building that he owned and made payments on with corporate funds; and (3) when the

corporations were virtually insolvent, demanded payment upon his notes and took over corporate assets to the detriment of other creditors.

Here, the trial court found, with record support, that (1) the complicated, interrelated and commingled financial circumstances of Trowbridge and his various business entities were intended to frustrate the entities' creditors; (2) Trowbridge's overall conduct resulted in a clear financial benefit to him, which was not properly documented because of his elaborate scheme of concealment; and (3) Trowbridge engaged in various transactions and complicit conduct that disregarded the separate LLC entities, intending to keep the "ambulance chasers" from identifying and reaching the LLCs' members' assets at the time of liquidation and provide him and one LLC member "plausible deniability" to insulate preferential distributions to another member.

Because allowing an LLC manager to hide behind the LLC's cloak of limited liability would promote injustice, protect fraud, or defeat legitimate creditors' claims, we conclude that the equitable common law doctrine of piercing the corporate veil may be applied to hold an LLC manager personally liable for the LLC's improper actions.

Accordingly, because the trial court's order dismissing Sheffield's claim to hold Trowbridge personally liable for the LLCs' obligations was based on an erroneous conclusion of law, we vacate the order and remand for the court to determine whether its findings as to Trowbridge's conduct warrant applying the common law doctrine of piercing the corporate veil to hold him personally liable for Colfax's breach of contract. The court shall make specific findings, and determine whether, under the common law, (1) Colfax is Trowbridge's alter ego (2) justice requires recognizing the substance of Trowbridge's relationship with Colfax because he used Colfax to perpetrate a fraud or defeat a rightful claim, and (3) disregarding the relationship's form and holding Trowbridge personally liable would lead to an equitable result.

## III. Wrongful Attempt to Deplete Assets

Sheffield contends that the trial court erred by ruling that (1) section 7–80–606, C.R.S.2008, does not provide a remedy to an LLC's creditors, and (2) an LLC manager is not subject to the common law duty imposed on corporate officers and directors to avoid favoring personal interests over those of the corporation's creditors. We disagree with the first contention and agree with the second.

### A. Section 7–80–606

Section 7–80–606, entitled "Limitations on distribution," provides in relevant part:

(1) A limited liability company shall not make a distribution to a member to the extent that at the time of distribution, after giving effect to the distribution, all liabilities of the limited liability company ... exceed the fair value of the assets of the limited liability company....

(2) A *member who receives a distribution* in violation of subsection (1) of this section and who knew at the time of the distribution that the distribution violated subsection (1) of this section, *shall be liable to the limited liability company* for the amount of the distribution.

(Emphasis added.)

This section permits an *LLC* to recover the amount of a wrongful distribution from a *member* who received it. Sheffield argues that it should be allowed to pursue a claim against Trowbridge under section 7–80–606 to recover wrongful distributions made by Colfax to one of its members. According to Sheffield, we should extend the analysis in *Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo. 1982), to this case and interpret section 7–80–606 as allowing an LLC's creditor to seek personal liability of an LLC manager who knowingly violates the terms of the statute.

The statute at issue in *Ficor*, section 7–5–114(3), C.R.S.1973, provided:

The *directors* of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obli-

gations, and liabilities *shall be jointly and severally liable to the corporation* for the value of such assets which are distributed, to the extent that such debts, obligations, and liabilities of the corporation are not thereafter paid and discharged.

(Emphasis added.) *Cf.* § 7-108-403(1), C.R.S.2008 (director who votes for or assents to distribution made in violation of section 7-106-401, C.R.S.2008, or articles of incorporation is personally liable to corporation).

Although the statute's plain language expressly provided a remedy only for the corporation, the court in *Ficor*, 639 P.2d at 393, held that "all creditors of a corporation, as a group" may assert the remedy provided by the statute "on behalf of the corporation for their own benefit." Therefore, the creditors as a group could recover the wrongfully distributed assets from the defendant corporate directors because those defendants were the parties expressly made liable for the wrongful distribution by the language of section 7-5-114(3).

 Section 7-80-606(2), C.R.S.2008, expressly provides that LLC members who receive a wrongful distribution are liable to the LLC. Sheffield asserts that two LLC members who are not parties to this action received wrongful distributions. Hence, if we accept Sheffield's invitation to apply the *Ficor* analysis and read into section 7-80-606(2) a remedy for LLC creditors, that remedy would be against one or both of those non-party members. Therefore, even assuming, without deciding, that we would extend the *Ficor* analysis to this case, Sheffield could not prevail because the proper parties against whom Sheffield could claim under section 7-80-606 are not parties to this action.

### B. Common Law Duty

Alternatively, Sheffield argues that the trial court erred in not extending to the LLC setting the common law duty owed by corporate officers and directors to avoid favoring their own interests over creditors' claims. We agree.

 Under the common law, an insolvent corporation's directors and officers are "trustees" for corporate creditors. *Alexander v. Anstine*, 152 P.3d 497, 502 (Colo.2007). However, as trustees, corporate directors and officers do not owe the corporation's creditors the full set of fiduciary duties owed to a solvent corporation's shareholders. *Id.* Their duty is limited and requires that, when a corporation becomes insolvent, its directors and officers must avoid favoring their own interests over creditors' claims. *Id.; Crowley v. Green*, 148 Colo. 142, 147, 365 P.2d 230, 232-33 (1961) (where a corporation is insolvent, its officers and directors cannot use corporate assets to prefer themselves to the prejudice of the corporation's creditors); *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1369 (Colo.App.1993) (common law duty requires that when corporation is insolvent, directors may not defeat a creditor's claim by transferring corporate property for their own benefit). If the corporate director breaches this duty, he or she is personally liable to the corporate creditors for such "malfeasance." *See New Crawford Valley*, 877 P.2d at 1369; *Collie v. Becknell*, 762 P.2d 727, 731 (Colo.App.1988).

 We have concluded above that an LLC is a business entity alternative to a corporation, whose managers, like a corporation's shareholders and directors, are subject to the common law piercing doctrine. We perceive no basis for declining to extend our reasoning to impose personal liability on LLC managers under the common law "trustee doctrine" that requires corporate directors to avoid favoring their own interests over the corporation's creditors' claims when the corporation becomes insolvent.

Corporations and LLCs are equally susceptible to becoming insolvent and having a director or manager distribute entity assets in a manner favoring personal interests over the corporation's or LLC's creditors. Not to extend the common law trustee doctrine to LLC managers would open the door to fraud and create a safe harbor for managers to favor personal interests over the LLC's creditors.

 Therefore, we conclude that when an LLC becomes insolvent, its manager owes a common law duty to the LLC's creditors to

avoid favoring personal interests over those of creditors. Breach of this duty results in the LLC manager's personal liability to those creditors. *See id.* This personal liability is distinct from the personal liability that may be imposed by applying the piercing the corporate veil doctrine to LLC managers.

Here, the trial court found that when Trowbridge distributed LLC assets to one of the non-party members, those distributions were "preferential as to the claims of [Colfax's] creditors, including [Sheffield]." The court further found:

> [The] entire factual pattern demonstrates complicit conduct intended to provide [Trowbridge] and one [non-party] member ... plausible deniability intended to insulate preferential distributions to another [non-party] member. The fair inference to be drawn from the overall conduct is that there was a clear financial benefit to [Trowbridge] although perhaps not documented, from this elaborate scheme of concealment.

However, the trial court made no findings whether Colfax was insolvent or whether Sheffield was its creditor at the time LLC assets were distributed. Therefore, we remand for the trial court to make those findings. If Colfax was or became insolvent when Trowbridge made those distributions, the court can then determine whether Trowbridge breached his common law duty owed to Colfax's creditors to avoid favoring his personal interests over theirs.

## IV. Negligent Misrepresentation/Nondisclosure

Sheffield contends the trial court erred in dismissing its "negligent misrepresentation/nondisclosure" claim against Trowbridge and Mason based on Sheffield's failure to show it justifiably relied on their misrepresentation that all required development work had been completed such that it could obtain building permits. We disagree.

### A. Standard of Review

■ We review the trial court's legal conclusions de novo, *Hartsel Springs Ranch, Inc. v. Cross Slash Ranch, LLC,* 179 P.3d 237, 239 (Colo.App.2007), and we defer to the trial court's findings of fact unless they have no support in the record. *Tatum v. Basin Res., Inc.,* 141 P.3d 863, 867 (Colo.App.2005).

### B. Analysis

■ To prevail on a claim for "negligent misrepresentation," Sheffield was required to prove that (1) Trowbridge and Mason supplied false information in their business transaction with Sheffield, (2) Trowbridge and Mason failed to exercise reasonable care or competence in communicating that information; and (3) Sheffield justifiably relied on the false information. *Campbell v. Summit Plaza Assocs.,* 192 P.3d 465, 477 (Colo.App. 2008).

Here, approximately two weeks prior to closing on the sale agreement between Colfax and Sheffield, Trowbridge and Mason received a letter from Broomfield informing them, in pertinent part:

> Colfax Industrial, Ltd. [sic] has not completed the aforementioned improvements in the timeframe required by the Subdivision Agreement. Be advised that the City and County of Broomfield will withhold issuance of additional building permits ... until these matters are addressed.

Neither Trowbridge nor Mason disclosed this letter to Sheffield before closing. Nor did they tell Sheffield that Colfax failed to complete the infrastructure improvements between the time they received the letter and closing.

At the Colfax closing, Trowbridge signed the sales agreement with Sheffield, which contained Section 5.1, entitled "Development Work," and provided:

> Seller represents that to the best of its knowledge, the Lots [sic] are finished and all required development work with respect to the Lots and Subdivision [sic] have [sic] been completed in a good and workmanlike fashion in conformance with the approved construction drawings as required by the applicable subdivision improvement agreement, such that Buyer can obtain building permits for the construction of residential improvements thereon and certificates of occupancy upon the

completion of same. The foregoing representations shall survive the Closing hereof.

█ Thus, because Trowbridge and Mason failed to disclose Colfax's failure to complete the required infrastructure at or prior to closing, through Section 5.1 they misrepresented that the LLCs had complied with that section. Nevertheless, the trial court concluded that there "could not be justifiable reliance in this case," and dismissed Sheffield's "negligent misrepresentation/nondisclosure" claim.

Sheffield argues that the trial court erred in finding it did not justifiably rely on Trowbridge and Mason's contractual misrepresentations or failure to disclose the Broomfield letter because (1) the court should not have imputed inquiry notice to Sheffield, (2) Sheffield should not have been held to a heightened duty to investigate the representations because it is a sophisticated developer, (3) Trowbridge and Mason "enjoyed superior access to information concerning actions taken by Broomfield," (4) a "two-week window prior to closing in which to conduct an investigation" did not provide it with a "reasonable opportunity to investigate," and (5) defendants' knowledge of the contents of Broomfield's letter did not "transform their representation into a mere promise to do something in the future." Because we agree with the trial court that Sheffield did not justifiably rely on Trowbridge and Mason's misrepresentation and nondisclosure, we reject these arguments in turn. *See Nelson v. Gas Research Inst.*, 121 P.3d 340, 344 (Colo. App.2005) (a necessary element to all fraud actions is that the plaintiff justifiably relied on the misrepresentation or the nondisclosure). In our analysis we assume, but decline to decide, that although Mason did not sign the sales agreements, a claim against him for negligent nondisclosure would be viable. *Cf. Lininger v. Eisenbaum*, 764 P.2d 1202, 1214 (Colo.1988) (J. Mullarky, concurring in part and dissenting in part) (law imposes upon physician duty of disclosing to patient certain information essential to patient's informed consent to performance of medical or surgical procedure on patient).

### 1. Inquiry Notice

The record includes evidence that prior to closing on either contract, Sheffield was aware that (1) it was purchasing real estate that was in foreclosure, (2) the LLCs had not completed the improvements required by the subdivision agreement, and (3) "nonperformance by [the LLCs]" had created "turmoil ... between [the LLCs] and [Broomfield]."

Sheffield's general manager testified that, prior to closing on both contracts, he had at least one meeting with Broomfield personnel who were monitoring the LLCs' progress. The general manager also testified that "[Broomfield] told [Sheffield] that [the LLCs' landscaping requirements were] not . complete," and "nothing was showing signs of it being completed." In addition, the general manager stated that he had learned through thirty-seven years of experience that Broomfield had the option to withhold building permits if a developer failed to comply with subdivision agreement requirements.

Thus, the record shows that Sheffield knew specific facts that should have aroused its suspicion and prompted it to conduct a reasonably diligent inquiry into the LLCs' compliance with Broomfield's improvement requirements prior to the closing date. *See Adelson v. Bd. of County Comm'rs*, 875 P.2d 1387, 1389 (Colo.App.1993) (imputation of inquiry notice requires sufficient facts to attract attention of interested persons and to prompt a reasonable person to inquire further). Therefore, we conclude that the trial court properly imputed inquiry notice to Sheffield.

### 2. Sophisticated Party

The trial court concluded that because Sheffield was a "sophisticated investor, laying out several million dollars as part of a transaction," it should have proceeded more diligently before closing on the contracts with the LLCs. Sheffield concedes that it is a "sophisticated party" as to real estate development contracts. However, it argues that its sophistication should not provide "legal protection" for the misrepresentations that "all development obligations had been sufficiently satisfied such that building permits could be obtained."

In a negligent misrepresentation claim, a contracting party's sophistication is relevant to determining whether a reasonable person in that party's position would have diligently investigated the transaction's subject matter prior to closing. *See Hart v. Ed–Ley Corp.*, 482 P.2d 421 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)) (purchaser with fifteen years experience in real estate investment could not complain of inadvertent false property tax statements given to him by vendors because purchaser had full and ample opportunity to make his own independent investigation).

Thus, we conclude that the trial court properly considered Sheffield's sophistication.

### 3. Equal Access

Sheffield argues that "even if inquiry notice was properly imputed, such notice does not render reliance unreasonable unless the information is equally available to the parties and would lead to the discovery of the true facts." Sheffield further asserts that because only Trowbridge and Mason received Broomfield's letter, they "enjoyed superior access to information concerning actions taken by Broomfield."

A party cannot say they were deceived by the other's misrepresentations where the means of knowledge are equally available to both parties *and* the subject matter is equally open to their inspection. *See Hayden v. Perry*, 110 Colo. 347, 350, 134 P.2d 212, 213 (1943).

Here, the letter itself, which contained the information that Broomfield would not issue building permits, was not equally available to Sheffield. However, the information in the letter was equally available to both parties. Sheffield had an unfettered opportunity to conduct a reasonable investigation and discover the information contained in the letter. Again, by physically inspecting the lots and inquiry to Broomfield, Sheffield would have obtained the same information contained in the letter, which defendants did not disclose.

Because Sheffield failed to exercise that opportunity, we reject its argument. *Hayden*, 110 Colo. at 350, 134 P.2d at 213; *see*

*also Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 749 (Colo.App. 2002) (citing *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo.App.2000)) (if a party has access to information that was equally available to both parties and would have led to the discovery of the true facts, that party has no right to rely upon a misrepresentation).

### 4. Reasonable Time to Investigate

Trowbridge and Mason received Broomfield's letter on or about June 16, 2004. The LLCs and Sheffield closed on the Colfax contract on June 30, 2004. No evidence in the record suggests that between these dates Sheffield could not have physically inspected the LLCs' progress and asked Broomfield whether it would preclude issuance of building permits. Thus, we agree with the trial court that two weeks was a reasonable time for Sheffield to investigate.

In sum, because Sheffield had a full and complete opportunity to investigate and ascertain facts concerning the lots it planned to purchase, we conclude that it may not recover from defendants on the theory that it was deceived by their misrepresentations. *See Cherrington v. Woods*, 132 Colo. 500, 506, 290 P.2d 226, 228 (1955).

### 5. Promise for Future Event

Having so concluded, we need not address Sheffield's additional argument that "the fact that [defendants'] knowledge changed based upon information regarding a potential future event does not transform their representation into a mere promise to do something in the future."

### V. Conclusion

The trial court's order is affirmed to the extent it dismisses (1) Sheffield's negligent misrepresentation/nondisclosure claim, and (2) Sheffield's claim of wrongful attempt to deplete assets under section 7–80–606. The order is vacated to the extent it dismisses Sheffield's claims against Trowbridge seeking to hold him personally liable for (1) the LLCs' breaches of contract under the equitable common law doctrine of piercing the cor-

porate veil, and (2) wrongful depletion of the LLCs' assets under the common law duty of LLC managers to avoid favoring personal interests over creditors' claims. The case is remanded to the trial court to determine, based on the evidence before it, (1) whether Trowbridge is a member or manager of Villas, (2) whether it is equitable to hold Trowbridge personally liable for the LLCs' improper actions by piercing the corporate veil, and (3) whether the LLCs were or became insolvent when Trowbridge distributed LLC assets to the non-party members, and if so, whether Trowbridge breached the common law duty of an LLC manager to avoid favoring personal interests over the LLCs' creditors' claims.

Judge ROY and Judge WEBB concur.