David **SKIPWORTH**, Kathryn Skipworth, Virgil Pineda, Linda Pineda, and Dale L. Thomas, Plaintiffs–Appellants,

v.

**BOARD OF EDUCATION OF WOODLAND PARK SCHOOL DISTRICT, RE–2**, Defendant–Appellee.

No. 93CA0141.

Colorado Court of Appeals, Div. IV.

April 21, 1994.

The Law Firm of Guy M. McCready, Guy M. McCready, Colorado Springs, for plaintiffs-appellants.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Marlene T. Gresh, Denver, for defendant-appellee.

Opinion by Judge ROTHENBERG.

Plaintiffs, David and Kathryn Skipworth, Virgil and Linda Pineda, and Dale L. Thomas, appeal the dismissal of their claims against the Board of Education of Woodland Park School District, Re–2 (board of education). We affirm and remand for an award of attorney fees.

Plaintiffs are the parents of high school students in the Woodland Park district.

They sued the board of education, its members, and the Colorado Commissioner of Education in a dispute about a world literature class which they alleged included:

the teaching of the ancient chronicles of pagan [Greek and Roman] religions, without offsetting such teaching with the ancient chronicles of other religions, including those found in the Bible.

Plaintiffs' complaint and amended complaint sought declaratory relief and damages for the defendants' alleged breach of a statutory or constitutional duty to teach morality in the public schools.

The defendants filed motions to dismiss which were granted when the trial court concluded that plaintiffs had failed to state a claim upon which relief could be granted. The trial court also awarded attorney fees to the Colorado Commissioner of Education on the ground that the action was frivolous.

Plaintiffs appeal only from the dismissal of their claims against the board of education. They do not challenge the dismissal of their claims against the other defendants.

Plaintiffs contend that the Colorado Constitution requires the teaching of morality in public schools. In their initial complaint, plaintiffs alleged that: "Morality cannot be taught without teaching some of the content of the Bible," and: "Much of the content of the Bible is essential to good citizenship."

At oral argument, however, plaintiffs' counsel conceded that previous court decisions now clearly prohibit the mandatory reading of the Bible in public schools. *See Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Nevertheless, plaintiffs maintain that: (1) "Certain studies plainly essential to good citizenship must be taught in the public schools"; and (2) "Morality is essential to good citizenship and must be taught in the public schools."

We conclude, as did the trial court, that plaintiffs have failed to state a legally cognizable claim against the board of education in either their initial complaint or their amended complaint. It thus follows that the trial court did not err in dismissing plaintiffs' claims against the board of education.

## A.

■ Whether a defendant owes a duty to the plaintiff is a question of law to be determined by the court. *See Board of County Commissioners v. Moreland,* 764 P.2d 812 (Colo.1988). In arguing for the existence of a duty here, plaintiffs first claim they have a fundamental right to a thorough education for their children by virtue of Colo. Const. art. IX, § 2, and that such a thorough education includes the teaching of morality. We are unpersuaded.

Colo. Const. art. IX, § 2, provides:

The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. One or more public schools, shall be maintained in each school district within the state, at least three months in each year; any school district failing to have such school shall not be entitled to receive any portion of the school fund for that year.

■ This constitutional provision, by its plain language, does not establish education as a fundamental right or impose any duty on the board of education. Rather, it requires the General Assembly to establish and maintain a school system. *See Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982). Hence, there is no constitutional premise for plaintiffs' cause of action.

## B.

Relying on *People ex rel. Vollmar v. Stanley,* 81 Colo. 276, 255 P. 610 (1927), plaintiffs next assert that: (1) good citizenship must be taught and thus, by implication, the teaching of morality is mandated since such is essential to good citizenship; and (2) the continued teaching of morality, as found in the Bible is not prohibited, as long as the Bible is not used in any religious manner. However, plaintiffs' reliance on *Vollmar* is misplaced.

In *Vollmar,* the Colorado Supreme Court upheld a school board rule requiring Bible reading in public schools. However, that decision clearly has been overruled by the United States Supreme Court's later decision in *Abington School District v. Schempp, supra.*

In *Conrad v. City & County of Denver,* 656 P.2d 662, 670 (Colo.1982), our supreme court recognized that, because the federal and state constitutional provisions regarding freedom of religion "embody similar values," the Colorado court would look to federal court decisions for guidance. And, after examining those decisions, the *Conrad* court stated:

> [W]e conclude that *Vollmar v. Stanley, supra,* wrongly interpreted the requirements of [Colo. Const. art. II, § 4] and now overrule it to the extent that it is inconsistent with the Establishment Clause standards set forth in *Abington.*

*See also Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (invalidating Kentucky law requiring schools to post the Ten Commandments for stated purpose of teaching citizenship).

### C.

Finally, plaintiffs claim the board of education is statutorily mandated to teach morality. Again, we disagree.

The board of education has been given statutory authority to "determine the educational programs to be carried on in the schools of the district." Section 22–32–109(1)(t), C.R.S. (1988 Repl.Vol. 9). However, the board's discretion is not unlimited, and the General Assembly has specified certain subjects that must be taught. These subjects are: the history, culture, and civil government of Colorado and the United States, including the history, culture, and contributions of minorities, *see* § 22–1–104, C.R.S. (1988 Repl.Vol. 9); honor and use of the flag, *see* § 22–1–106, C.R.S. (1988 Repl. Vol. 9); the federal constitution, *see* § 22–1–108, C.R.S. (1988 Repl.Vol. 9); and the effect of alcohol and controlled substances. *See* § 22–1–110, C.R.S. (1988 Repl.Vol. 9). The method in which these subjects are to be taught and the emphasis to be placed upon standards of conduct, discipline, and values in general is within the province of the board of education and not this court. *See generally* Moskowitz, *The Making of the Moral Child: Legal Implications of Values Education,* 6 Pepperdine L.Rev. 105 (1978).

We also reject plaintiffs' argument that the broad reference in Colo. Const. art. IX, § 2, to a "thorough and uniform system of free public schools" requires this court to read into otherwise clear and unambiguous statutes a duty to teach morality. Again, the courts may not read into the statutes an obligation which neither the constitution nor the General Assembly has imposed on a board of education. *See Griffin v. S.W. Devanney & Co.,* 775 P.2d 555 (Colo.1989).

Similarly unpersuasive is plaintiffs' reliance on various statutes concerning student discipline and teacher qualifications and dismissal. The cited sections, §§ 22–32–110(1)(bb), 22–60–102(1), and 22–63–116, C.R.S. (1988 Repl.Vol. 9); and § 22–33–106(1)(c), C.R.S. (1993 Cum.Supp.) (effective July 1, 1993, reference to "morals" deleted); do not impose curriculum requirements or a duty to teach a subject in any particular way.

In summary, the General Assembly has given the board of education authority to choose which non-mandatory subjects are taught in the public schools. And, absent a constitutional or statutory violation, which has not been shown here, this court lacks the authority to interfere with the exercise of that discretion. As Justice Blackmun noted in a concurring opinion in *Board of Education v. Pico,* 457 U.S. 853, 880, 102 S.Ct. 2799, 2815, 73 L.Ed.2d 435, 455 (1982):

> School officials must be able to choose one book over another, without outside interference, when the first book is deemed more relevant to the curriculum, or better written, or when one of a host of other politically neutral reasons is present. . . .

We therefore conclude that there is no constitutional or statutory duty on which plaintiffs' claims could be based. Accordingly, the trial court properly dismissed the complaint against the board of education. *See* C.R.C.P. 12(b)(5).

Given this conclusion, we do not address the other grounds for affirmance asserted by the board of education, which include governmental immunity and the absence of a private right of action. *See Board of County Commissioners v. Moreland, supra.*

### D.

The trial court also awarded attorney fees in favor of the Colorado Commissioner of Education and against plaintiffs and their counsel. That award was premised on the trial court's finding that this action was frivolous because plaintiffs had relied primarily on an overruled case and on constitutional and statutory provisions which impose no duty, and because plaintiffs had presented no rational argument based on existing law. In its answer brief, the board of education has requested attorney fees for this appeal, and we note that plaintiffs' reply brief did not respond to that request.

Accordingly, for the reasons set forth by the trial court, we conclude that the appeal also is frivolous, and we award to the board of education reasonable attorney fees incurred in defending this appeal. *See* C.A.R. 38(d); *Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984). On remand, the trial court is directed to determine those fees and enter judgment in that amount jointly against plaintiffs and their counsel.

The judgment is affirmed, and the cause is remanded for further proceedings in accordance with this opinion.

PLANK and MARQUEZ, JJ., concur.