2012 COA 27

**Richard C. LaFOND, Esq.,**
Plaintiff–Appellee,

v.

**Charlotte N. SWEENEY, Esq.,**
Defendant–Appellant.

No. 10CA2005.

Colorado Court of Appeals,
Div. VI.

Feb. 16, 2012.

Dean Neuwirth, P.C., Dean Neuwirth, Denver, Colorado, for Plaintiff–Appellee.

Burns Figa & Will, P.C., Jennifer M. Osgood, Greenwood Village, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

¶1 When a limited liability company (LLC) dissolves, the distribution of its assets is normally governed by statutes and any relevant written agreement its members have approved. Here, a law firm, consisting of two members, was organized as an LLC. One of the members, plaintiff, Richard C. LaFond, brought a contingent-fee case into the law firm, and considerable work was done on the case.

¶2 The law firm dissolved. LaFond continued to represent the client.

¶3 When the firm dissolved, there was no written agreement that generally described how the law firm's assets should be distributed between LaFond and the law firm's other member, defendant, Charlotte N. Sweeney. And there was no written agreement that specifically described how the contingent fee generated by the case should be distributed. Therefore, we must look to other authority to decide the ultimate issue raised by this appeal: should the contingent fee be divided between LaFond and Sweeney, and, if so, how?

¶4 We focus on three principles. First, we examine the ethical duties that attorneys owe clients. From that examination, we distill the first principle: cases belong to clients, not to attorneys or law firms, and any decision we reach must protect the interests of clients.

¶5 Second, we evaluate the nature of attorney-client fee agreements. From that evaluation, we obtain the second principle: when attorneys handle contingent fee cases to successful resolution, they have enforceable rights to the contingent fee.

¶6 Third, we analyze pertinent components of the law of LLCs. From that analysis, we garner the third principle: a contingent fee may constitute an asset of a dissolved law firm organized as an LLC, which is to be divided among the firm's members once it is earned.

¶7 Applying these principles, we conclude:

1.  When the law firm in this case dissolved, the client had sole authority to

determine who should represent him. Here, he chose LaFond.

2. LaFond handled the client's case to its resolution, and so he has rights in the contingent fee.

3. Because the contingent-fee case was brought into the law firm before the firm dissolved, and because LaFond continued to handle the case until it was resolved, the contingent fee allocated to him as a result of the settlement is the firm's asset. Therefore, Sweeney also has rights in the contingent fee.

4. LaFond owed the dissolved law firm fiduciary duties, including a duty to divide the firm's assets with Sweeney in accord with the oral fee-sharing arrangement in place when the firm dissolved. This duty extends to the contingent fee.

5. As a result of these conclusions, we reverse the trial court's judgment in favor of LaFond and remand to the trial court for further proceedings to determine the amount of the contingent fee that should be awarded to Sweeney.

## I. Background

¶ 8 After they formed the LLC, LaFond and Sweeney orally agreed to share equally in all the firm's profits, without regard to who brought cases into the office or who did work on them. The law firm dissolved on June 1, 2008.

¶ 9 Several cases were pending when the firm dissolved, including the representation of Bobby Maxwell in a qui tam whistle-blower action brought under the False Claims Act, 31 U.S.C. §§ 3729 to 3733. *United States ex rel. Maxwell v. Kerr McGee Oil & Gas Corp.*, No. 04–CV–01224–MSK–CBS (D.Colo.). The law firm was co-counsel with another attorney, Michael Porter, on this case, and it involved a contingent fee agreement. LaFond continued to represent Maxwell as co-counsel with Porter after the firm dissolved, entering his appearance under the firm Richard C. LaFond, P.C.

¶ 10 When the law firm dissolved, LaFond and Sweeney were unable to agree on the division of the fees that might ultimately be earned from the Maxwell case. Sweeney filed a notice of attorney's lien on behalf of the law firm and herself to protect their interest in any fees, costs, or reimbursements that might be generated by the Maxwell case.

¶ 11 LaFond then filed this action for declaratory relief against Sweeney to determine how these fees should be distributed. Sweeney answered, joined the law firm as a party, and filed counterclaims, including a request to enforce the attorney's lien.

¶ 12 This case was tried to the court. The record establishes that, before the firm dissolved, over 1600 hours of work had been invested in the Maxwell case. Further, as of trial, LaFond proved that he had worked an additional 68 hours on the Maxwell case.

¶ 13 The trial court determined that (1) the Maxwell case had been an asset of the law firm; (2) the value of the case as the firm's asset was its value when the law firm dissolved on June 1, 2008; (3) the value was to be determined by a calculation based on work that was done and costs that were advanced as of June 1, 2008; (4) this calculation multiplied the number of hours worked by the hourly billing rate, which resulted in a figure of $536,636.50 in fees, with added costs of $60,543.38, which resulted in a total of $597,179.88; (5) the oral agreement between LaFond and Sweeney required that any "profit" from the case be divided equally; and (6) if LaFond recovered contingent fees from the Maxwell case, Sweeney would be entitled to one half of them up to a ceiling of $597,179.88, or a maximum of $298,589.94.

¶ 14 We have recently been informed that the Maxwell case has settled. Sweeney has provided us with a complaint in interpleader that Porter filed in the Denver District Court. In it, Porter (1) recognizes the dispute between LaFond and Sweeney over the contingent fee allocated to LaFond in the settlement of the case; (2) anticipates receiving funds in the "near future" that are the subject of that dispute; (3) states that LaFond and Sweeney "have agreed" that a portion of those funds "may properly be

paid" to LaFond or Sweeney; and (4) adds that another portion "remains in dispute and needs to be safely sequestered" to protect the interests of Sweeney and the law firm.

¶ 15 The document then states that "it has been agreed that the following amounts remain in dispute [between LaFond and Sweeney]." Porter describes those amounts as $743,881.33 in contingent fees; pro rata interest on $743,881.33, which would be approximately $1,800 to $2,000; and $57,821.78 in costs. He states that these amounts will be placed in the court's registry, which will, he contends, "sufficiently protect" the interests of Sweeney and the law firm.

¶ 16 However, despite our request at oral argument for clarification, LaFond and Sweeney have not provided us with sufficient information for us to determine whether the portion of the funds that they agreed "may properly be paid to LaFond or Sweeney" includes either compensation to LaFond for the work he did on the case after the law firm was dissolved, or compensation to LaFond and Sweeney for work done before the law firm was dissolved, based on hours worked times hourly billing rate, up to one half each of $597,179.88, or $298,589.94 apiece.

¶ 17 They have also not provided us with sufficient information for us to determine what Porter meant by his statement that $743,881.33 in contingent fees, pro rata interest of $1,800 to $2,000, and $57,821.78 in costs "remain in dispute." For example, we cannot determine whether $743,881.33 in contingent fees represents all the contingent fees allocated to LaFond in the settlement of the case; one half of the entire figure; or an amount based on some other calculation.

¶ 18 On appeal, LaFond and Sweeney agree that their oral agreement requires them to divide the "profits" from the Maxwell case equally. They dispute, however, how those "profits" should be calculated.

¶ 19 LaFond agrees with the trial court's decision to award Sweeney $298,589.94, based on an hourly valuation of attorney time and costs expended by the firm as of June 2008. He contends that Sweeney is not entitled to any more. Sweeney disagrees with

the trial court's order, arguing that the court employed the wrong legal standard for calculating the value of the Maxwell case. She submits that she and the law firm are entitled to half the entire contingent fee awarded in the Maxwell case. We agree with Sweeney.

## II. Analysis

### A. Standard of Review

¶ 20 This case presents a question of law, which we review de novo. *See E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000).

¶ 21 Our analysis also requires statutory interpretation, which is likewise a question of law that we review de novo. *Crow v. Penrose–St. Francis Healthcare System*, 262 P.3d 991, 995 (Colo.App.2011). Our duty is to determine and give effect to the legislature's intent. When interpreting a statute, we look to its language, and we construe it according to the rules of grammar and common usage. *Id.* Our interpretation "should give consistent, harmonious, and sensible effect to all parts of a statute." *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010).

### B. Principle One: The Case Belongs to the Client

¶ 22 The attorney-client relationship is a fiduciary arrangement. *Olsen & Brown v. City of Englewood*, 889 P.2d 673, 675 (Colo.1995). When an attorney who has had the primary responsibility for handling a case leaves a law firm, the client has a nearly unfettered right to choose to be represented by the law firm, to be represented by the departing attorney, or to hire new counsel. Colo. RPC 1.16(a)(3) ("a lawyer shall not represent a client or ... shall withdraw from the representation of a client if ... the lawyer is discharged"). "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Colo. RPC 1.16 cmt. [4].

¶ 23 Clients do not "belong" to law firms or to attorneys. Colorado Bar Ass'n, Formal Ethics Op. 116, *Ethical Consider-*

ations in the *Dissolution of a Law Firm or a Lawyer's Departure from a Law Firm* (2007) (Formal Ethics Op. 116). "[A] client represented by a particular lawyer or law firm will have to choose counsel again if the firm breaks up or the responsible lawyer departs from the firm during the course of the representation." *Id.* This authority means that a client's case "belongs" to the client, not to the attorney. *See* Mark Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession,* 128 U. Pa. L.Rev. 41, 73 (Nov. 1979) ("A claim, a case, or a problem belongs to the client; this claim of ownership gives the client a presumptive right of control.").

■ ¶ 24 Attorneys and law firms must not engage in conduct that would impermissibly interfere with a client's right to choose his or her counsel. For example, when a firm represents a client and the firm then dissolves, the client will "have to choose counsel again." Formal Ethics Op. 116. "[A] dispute between attorneys in a law firm over a fee that is due or may come due should not impact the client's right to freely choose counsel." *Id.*

### C. Principle Two: A Contingent Fee Agreement Provides the Attorney with Certain Rights

■ ¶ 25 Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics.

*Cohen v. Radio–Electronics Officers Union,* 146 N.J. 140, 155, 679 A.2d 1188, 1196 (1996).

¶ 26 A contingent fee agreement that complies with the requirements of Chapter 23.3 of the Colorado Rules of Civil Procedure is enforceable. Chapter 23.3, Rule 6 ("No contingent fee agreement shall be enforceable by the involved attorney unless there has been substantial compliance with all of the provisions of this Chapter 23.3."); Colo. RPC 1.5(c) ("A fee may be contingent on the outcome of the matter for which the service is rendered.... A contingent fee agreement shall meet all of the requirements of Chapter

23.3 of the Colorado Rules of Civil Procedure.").

■ ¶ 27 An enforceable contingent fee agreement provides notice to a client that should the attorney fulfill his end of the bargain to the benefit of the client, the client will be required to pay the attorney from the funds the attorney receives for the client. Hence, where the agreed upon legal services are completed, the client has the expectation that she must pay the attorney.

*Mullens v. Hansel–Henderson,* 65 P.3d 992, 998 (Colo.2002).

■ ¶ 28 However, a contingent fee agreement does not create an "ordinary" contract. *See Olsen & Brown,* 889 P.2d at 676. Because of the special fiduciary nature of the attorney-client relationship, a client's discharge of an attorney does not constitute a breach of contract, but is, instead, the client's exercise of a right inherent in the relationship. *Id.*

■ ¶ 29 Rather than being able to sue for breach of contract, an attorney's remedy is limited to "recovery of the reasonable value of services rendered before discharge on the basis of quantum meruit" when the attorney is discharged without cause under a non-contingency contract for services, *id.* at 677; when the attorney withdraws from representation before successful completion of a contingent fee case and such quantum meruit recovery is expressly described in the fee agreement, *Elliott v. Joyce,* 889 P.2d 43, 45 (Colo.1994); or when the attorney's services are "successfully completed" but the contingent fee agreement was unenforceable because it was not in writing, *Mullens,* 65 P.3d at 999.

■ ¶ 30 In such circumstances, quantum meruit

does not depend upon the existence of a contract, either express or implied in fact. Rather, it arises out of the need to avoid unjust enrichment to a party even in the absence of an actual agreement to pay for the services rendered.... Under some circumstances, a party to an unenforceable express contract may recover under quan-

tum meruit.... [I]n general, a quantum meruit claim may exist independently of a contract and need not turn on whether the contract between the parties met specified requirements.

*Dudding v. Norton Frickey & Assocs.,* 11 P.3d 441, 444–45 (Colo.2000). In the attorney-client context, the remedy of quantum meruit is designed to prevent the client from benefiting to the unfair detriment of the attorney. *Id.* at 444. The remedy accomplishes this goal by weighing the equities and ensuring that the client who received the benefit of the attorney's work pays "a reasonable sum for that benefit." *Id.* at 445.

D. Principle Three: A Contingent Fee May Be an Asset of a Dissolved Law Firm, to Be Divided Among Its Members Once It Is Earned

1. Cases from Other Jurisdictions Are Helpful When Analyzing Whether a Contingent Fee Is an Asset of a Colorado Law Firm Organized as an LLC

¶ 31 LLCs are creatures of statute. *See Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997, 1000 (Colo.1998); *see* §§ 7–80–101 to –1101, C.R.S.2011 (Colorado Limited Liability Company Act). Most states have based their LLC statutes on the model code promulgated by the National Conference of Commissioners on Uniform State Laws. *Water, Waste & Land,* 955 P.2d at 1000. Colorado, however, created its LLC statute by combining features of its existing limited partnership and corporation statutes. *Id.* Still, the Colorado Limited Liability Company Act includes the basic features of the uniform code adopted by other states. *Id.*

¶ 32 The parties have cited no Colorado case law on the distribution of assets of a dissolved LLC, and we are aware of none. Under such circumstances, we may seek guidance from decisions involving other forms of business entities that share common traits. *See, e.g., Sheffield Servs. Co. v. Trowbridge,* 211 P.3d 714, 721 (Colo.App.2009) (extending corporate veil-piercing doctrine to managers of an LLC); *Colt v. Mt. Princeton Trout Club, Inc.,* 78 P.3d 1115, 1119 (Colo.App.2003)(citing *Pueblo Bancorp. v. Lindoe, Inc.,* 37 P.3d 492, 499 (Colo.App.

2001), *aff'd in part,* 63 P.3d 353 (Colo.2003))(comparing the relationship between directors and shareholders of a closely held corporation to the relationship among partners); *see also* Christopher C. Wang, Comment, *Breaking Up Is Hard to Do: Allocating Fees from the Unfinished Business of A Professional Corporation,* 64 U. Chi. L. Rev. 1367, 1371 (1997) (arguing that where law firm is organized as a professional corporation "courts should explicitly acknowledge the implicit and sensible categorization of attorney-shareholder withdrawals based on whether the corporation dissolves (applying partnership law) or survives (applying corporate law)").

¶ 33 We may also look to decisions of other states applying statutes comparable to our own. *See, e.g., Showpiece Homes Corp. v. Assurance Co. of America,* 38 P.3d 47, 54 (Colo.2001); *Colo. Dep't of Revenue v. Woodmen of World,* 919 P.2d 806, 812 (Colo.1996).

¶ 34 Other jurisdictions addressing the allocation of contingent fees following dissolution of a law firm have applied principles of partnership law to other types of business entities. *See, e.g., Vowell & Meelheim, P.C. v. Beddow, Erben & Bowen, P.A.,* 679 So.2d 637 (Ala.1996) (professional association); *Fox v. Abrams,* 163 Cal.App.3d 610, 210 Cal.Rptr. 260, 263 (1985)(professional corporation); *Sullivan, Bodney & Hammond v. Bodney,* 16 Kan.App.2d 208, 820 P.2d 1248, 1250 (1991)(law corporation); *Hurwitz v. Padden,* 581 N.W.2d 359, 362 (Minn.Ct.App. 1998)(LLC).

¶ 35 With one exception, which we describe in subsection II.D.5 below, we find the application of the law of partnerships to be suitable under Colorado law. LLCs share many important characteristics of partnerships, particularly in dissolution. *See* §§ 7–64–101 to 1206, C.R.S.2011. In fact, much of the language of the two acts is similar, although not identical. As observed by the trial court here,

the duties owed to each other by members of a member-managed LLC are nearly identical to those owed by partners. *Compare* § 7–80–404, and § 7–64–404. The [Colorado Limited Liability] Act controls

in the absence of an operating agreement, just as the Colorado Uniform Partnership Act is controlling in the absence of a partnership agreement. § 7–80–108; § 7–64–103.

Members of an LLC and partners are required to account to the respective entity "and hold as trustee for it any property, profit, or benefit derived [by the member or partner] in the conduct or winding up" of the LLC or partnership. § 7–80–404[ (1)(a) ], 7–64–404[ (1)(a) ].

¶ 36 In addition, an LLC or partnership is not terminated by dissolution; rather, each entity continues in existence for the sole purpose of winding up its business. §§ 7–80–803, 7–64–802, C.R.S.2011. The statutory language describing the rights of members or partners to wind up an entity's business is substantially identical. *See* §§ 7–80–803.3, 7–64–803, C.R.S.2011.

¶ 37 Thus, partnership law principles provide some guidance when examining the end stages of an LLC. Moreover, because Colorado's partnership act is based on the Uniform Partnership Act, we must effectuate the legislature's intent "to make uniform the law with respect to [partnerships] among states enacting" the model code. § 7–64–1201, C.R.S.2011. Accordingly, those states' decisions addressing the issue before us have significant persuasive value.

¶ 38 We also recognize that members of LLC law firms owe each other fiduciary duties. *See* § 7–80–404, C.R.S.2011 (duties of members and managers of LLCs); *Hooper v. Yoder,* 737 P.2d 852, 859 (Colo.1987)("Partners in a business enterprise owe to one another the highest duty of loyalty; they stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and square dealing."); *Silverberg v. Colantuno,* 991 P.2d 280, 284–85 (Colo.App.1998)("Partners in a business enterprise owe fiduciary duties to one another that encompass the highest duty of loyalty."); *Meehan v. Shaughnessy,* 404 Mass. 419, 535 N.E.2d 1255, 1263 (1989)("It is well settled that partners [in a law firm] owe each other a fiduciary duty of 'the utmost good faith and loyalty.... [They are] obliged to consider their copartners' welfare, and not merely their own." (quoting *Cardullo v. Landau,* 329 Mass. 5, 8, 105 N.E.2d 843, 845 (1952))).

### 2. A Pending Case Is Unfinished Business to Be Completed in the Process of Winding Up a Law Firm Organized as an LLC

¶ 39 After dissolution, an LLC remains in existence to do "every ... act necessary to wind up and liquidate its business and affairs." § 7–80–803(1)(e), C.R.S.2011. Thus, "dissolution ... operates only with respect to future transactions; the [entity] continues as to all existing matters until they are terminated." *Gull v. Van Epps,* 185 Wis.2d 609, 517 N.W.2d 531, 536 (App.1994)(citing *United Counties Trust Co. v. Podvey,* 160 N.J.Super. 244, 389 A.2d 515, 518 (N.J.Super. Ct. Law Div.1978)).

¶ 40 One such transaction is an "executory" contract, or a contract that "remains wholly unperformed or for which there remains something still to be done on both sides." *See Black's Law Dictionary* 344 (8th ed. 2004). The completion of executory contracts is part of winding up the company's business. *See Beckman v. Farmer,* 579 A.2d 618, 641 (D.C.1990); *Platt v. Henderson,* 227 Or. 212, 361 P.2d 73, 82 (1961) (dissolution does not free members from their obligation to complete firm's executory contracts); *Gull,* 517 N.W.2d at 537 (citing *Rossetti v. City of New Britain,* 163 Conn. 283, 303 A.2d 714, 718 (1972)).

¶ 41 A contingent fee case that is pending at the time a law firm dissolves is a form of executory contract between the law firm and the client. *See Turner v. Avery,* 947 F.2d 772, 774 (5th Cir.1991) (recognizing the executory nature of a contingent fee agreement). However, an attorney does not receive an equitable or legal interest in the contingent fee until the contingency—a final judgment or settlement—occurs. *See Missouri Pac. R.R. Co. v. Austin,* 292 F.2d 415, 419 (5th Cir.1961). Although the act of dissolution changes certain practicalities of the client's interaction with the firm, it does not void or negate the contract or release the firm from its obligations to the client. *See Platt,* 361 P.2d at 82.

¶ 42 Dissolution does not terminate an LLC. *See* § 7–80–803(1), C.R.S.2011. Rather, such a firm continues to exist as a legal entity for the purpose of winding up unfinished business—such as completing its representation of a client as specified in an existing agreement.

### 3. A Former Partner Who Completes a Case Does So on Behalf of the Dissolved Firm

¶ 43 An attorney who carries on the representation of a client on an existing case after a law firm dissolves does so on the firm's behalf. Under section 7–80–404(1)(a) and (b), C.R.S.2011, a member must

[a]ccount to the [LLC] and hold as trustee for it any property, profit, or benefit derived by the member or manager in the conduct or winding up of the [LLC's] business

and

[r]efrain from dealing with the [LLC] in the conduct or winding up of the [LLC] business as or on behalf of a party having an interest adverse to the [LLC].

Thus, any income received by a member from winding up unfinished business belongs to the dissolved firm, and any attempt by the member to convert such business solely to his or her own business violates the duty owed to the dissolved firm.

¶ 44 In fact, absent a contrary agreement, members of a law firm organized as a partnership or LLC cannot convert ongoing client matters to new firm business. *Cf. Meehan,* 535 N.E.2d at 1260 (agreement provided that departing partner could remove certain cases upon payment to former law firm of "fair charge"). "[W]e must look to the circumstances existing on the date of dissolution of a partnership, not events occurring thereafter, to determine whether business is unfinished business of the dissolved partnership." *Jewel v. Boxer,* 156 Cal. App.3d 171, 203 Cal.Rptr. 13, 18 (1984). Thus, a substitution of counsel between the dissolved firm and a former partner's new firm does "not alter the character of the cases as unfinished business of the old firm." *Id.*

¶ 45 In reaching this conclusion, we keep in mind the first principle of law discussed above that the case belongs to the client, not the attorney. Therefore, Maxwell could have chosen to discharge the dissolving law firm *and* all its attorneys. In such circumstances, he would not have been required to pay the firm or its attorneys the contingent fee. *See* Colo. RPC 1.16(a)(3); Colo. RPC 1.16 cmt. [4]; Formal Ethics Op. 116. At most, he might have been liable to the attorneys or the law firm in quantum meruit for the work done before he discharged them. *See Mullens,* 65 P.3d at 999; *Dudding,* 11 P.3d at 444–45; *Olsen & Brown,* 889 P.2d at 677; *Elliott,* 889 P.2d at 45.

¶ 46 However, Maxwell did not seek new counsel. Rather, LaFond continued to represent Maxwell after the law firm dissolved. By doing so, Maxwell manifested his intention "of retaining [LaFond] to fulfill the continuing obligation of the firm." *Frates v. Nichols,* 167 So.2d 77, 80 (Fla.Dist.Ct.App. 1964). And, in these circumstances, LaFond "was not entitled to take any action with respect to the unfinished business leading to purely personal gain, such as having the client discharge [the law firm] and hire him individually." *Ellerby v. Spiezer,* 138 Ill. App.3d 77, 92 Ill.Dec. 602, 485 N.E.2d 413, 416–17 (1985).

¶ 47 Keeping in mind our second principle of law—that a contingent fee agreement provides an attorney with certain rights—Maxwell was required to pay the contingent fee when the case settled because the agreed upon legal services had been completed. *See Mullens,* 65 P.3d at 998. Thus, the holdings of cases limiting the recovery of attorneys to quantum meruit when they are discharged by a client, such as *Olsen & Brown* and *Elliott,* are inapposite to the issue raised here, which is: what are the rights of attorneys who were previously members of a dissolved LLC in the assets of that LLC?

¶ 48 LaFond contends that any holding that potentially characterizes a contingent fee as an asset of a dissolved law firm could interfere with the first principle by impeding a client's right to renegotiate the contingent fee with the attorney who remained on the case. Such an impediment, he argues, is

contrary to Formal Ethics Op. 116 ("[A] dispute between attorneys in a law firm over a fee that is due or may come due should not impact the client's right to freely choose counsel.").

¶ 49 Initially, we note that there is no clear indication in the record that (1) Maxwell wished to renegotiate the contingent fee with LaFond after the law firm dissolved; or (2) if he did wish to renegotiate, his desire was impeded by LaFond's previous relationship with the law firm. As a result, we have no reason to believe that Maxwell's right to choose his counsel was adversely affected by this dispute between LaFond and Sweeney over the contingent fee.

¶ 50 At least for the purposes of this case, any assertion that a decision characterizing a contingent fee as an asset of a dissolved law firm would necessarily impede Maxwell's right to renegotiate the contingent fee with LaFond is speculation. *Cf. Webb v. Commonwealth*, 32 Va.App. 337, 346, 528 S.E.2d 138, 142 (2000) ("Although we acknowledge the apparent dilemma created by an attorney's ethical obligation to zealously represent his or her client and the economic constraints on the time he or she can devote to a case, we will not overturn a criminal conviction merely because the dilemma exists where no actual conflict is shown to exist and no ineffective assistance of counsel is proven.").

¶ 51 Further, we note that the putative problem LaFond identifies is not limited to the dissolution of law firms. The same argument could be raised in circumstances in which a law firm organized as an LLC is not dissolved. In other words, there is always a risk that a client may wish to renegotiate a contingent fee agreement with an attorney who remains part of such a firm. Depending on the conditions of the LLC agreement governing the firm, a member attorney handling a contingent fee case as part of an ongoing firm could be required to obtain the consent of other members before renegotiating the contingent fee. We have not found any case that suggests that such arrangements among attorneys are to be eschewed because they could interfere with the ability of clients to renegotiate contingent fee agreements. *See In re Labrum & Doak, LLP*, 227

B.R. 391, 409 (Bankr.E.D.Pa.1998)("In response to the argument that, upon adoption of [the concept that a contingent fee is a partnership asset to be shared among partners of a law firm after it dissolves], the 'sky will be falling,' we note that the Defendants are unable to point to any disasters which have developed in any of the many jurisdictions from which the cases [approving of this concept] emanate.").

¶ 52 Moreover, if an attorney in an ongoing LLC has a fiduciary duty to the other members that would require him or her to obtain their consent before renegotiating a contingent fee, *see Gast v. Peters*, 267 Neb. 18, 671 N.W.2d 758, 763–64 (2003), LaFond has not offered any reason why such a fiduciary duty would disappear after the LLC has dissolved. Rather,

[b]ecause a [law firm] partnership terminates only when the business of the partnership has been wound up, whatever rules apply with regard to distribution before the partnership is dissolved apply after it is dissolved but before it is terminated by the winding up of its affairs.

*Id.* at 763.

### 4. The Contingent Fee Allocated to LaFond in the Settlement Is the Dissolved Law Firm's Asset

¶ 53 As a result of the analysis in this section, we rely on two of the concepts we have identified—that a pending contingent fee case constitutes unfinished business of a dissolved firm and that a former LLC member who completes the case necessarily does so on behalf of the firm—to lead us to the conclusion that the fee ultimately earned in such a case is an asset that belongs to the firm. Thus, our decision here only addresses the relative rights of LaFond and Sweeney.

¶ 54 To determine those rights, we must answer the question of how that asset should be apportioned among the former members of a law firm organized as an LLC. Like profits and losses, "[d]istributions of cash or other assets of a[LLC] shall be allocated among the members ... on the basis of the value ... of the contributions made by each member." § 7–80–504, C.R.S.2011; *see also* § 7–80–503, C.R.S.2011 (profits and losses).

¶ 55 The great majority of states have concluded that contingent fees ultimately generated from cases that were pending at the time of dissolution of a law firm must be divided among the former law partners according to the fee-sharing arrangement that was in place when the firm dissolved. *See Labrum & Doak, LLP*, 227 B.R. at 409 (collecting cases); *Vowell*, 679 So.2d at 640; *Fox*, 210 Cal.Rptr. at 266; *Jewel*, 203 Cal.Rptr. at 18; *Frates*, 167 So.2d at 81; *Ellerby*, 92 Ill.Dec. 602, 485 N.E.2d at 416–17; *Sullivan*, 820 P.2d at 1251; *Resnick v. Kaplan*, 49 Md.App. 499, 434 A.2d 582, 587 (1981); *Hurwitz*, 581 N.W.2d at 361; *cf. Kirsch v. Leventhal*, 181 A.D.2d 222, 586 N.Y.S.2d 330 (1992) (same, but firm's interest may be limited to the extent that fees result from post-dissolution efforts). Thus, absent a contrary agreement, a contingent fee earned during the winding up of an LLC is subject to the fee-sharing arrangement that existed at the time of dissolution.

¶ 56 We agree with the majority view, and we apply it here. However, we take care to articulate a distinction not contemplated by some of those jurisdictions. Specifically, relying on the first and second principles discussed above, we distinguish between a pending contingent fee *case* as unfinished business to be completed in winding up a firm, and the *fee* generated by that case as property of the firm.

¶ 57 In *Jewel*, the California Court of Appeal recognized the duty of former law firm partners to wind up the partnership's unfinished business by completing work on cases that were in progress at the time of dissolution. 203 Cal.Rptr. at 16. "Thus, absent a contrary agreement, any income generated through the winding up of unfinished business is allocated to the former partners according to their respective interests in the partnership." *Id.* The same principles were later applied to dissolution of a law corporation in *Fox. See* 210 Cal.Rptr. at 266 ("[W]ork in process should be considered unfinished business of the former firm and ... the fees derived from such cases should be divided on the basis of a *Jewel* ... formula.").

¶ 58 *Fox* pointed out important policy reasons for treating contingent fees as assets of a dissolved law firm. To do otherwise would (1) encourage partners to compete for the most lucrative cases during the law firm's existence so that they could keep them should the firm dissolve; (2) encourage partners of a dissolving law firm to "scramble" to seize client files and solicit clients; and (3) undercut the fiduciary duty that members of law firm LLCs owe to each other. *See id.* at 265–66.

¶ 59 In *Ellerby*, the Illinois Appellate Court held that "contingent fee cases pending at the time of dissolution continue[ ] to be partnership business after dissolution and any fees from those cases are assets of the partnership." 92 Ill.Dec. 602, 485 N.E.2d at 417.

¶ 60 The vast majority of other jurisdictions to address this issue have come to the same conclusion regarding the distribution of fees from contingent fee cases pending when a law firm dissolves. Many, however, do not distinguish between the pending *case* and the *income* it generates when discussing whether a contingent fee should be characterized as a firm asset for purposes of property division. *See, e.g., Vowell*, 679 So.2d at 640 (cases are assets); *Beckman*, 579 A.2d at 636 ("[P]ending cases are uncompleted transactions requiring winding up after dissolution, and are therefore assets of the partnership subject to post-dissolution distribution.")(also generally referring to fees and postdissolution earnings as assets); *Frates*, 167 So.2d at 79 & 81–82 (clients and cases are assets); *Sullivan*, 820 P.2d at 1251 (cases are assets); *Hurwitz*, 581 N.W.2d at 361–62 & 364 (referring interchangeably to files, cases, and fees as assets); *Kirsch*, 586 N.Y.S.2d at 330 (files or cases may be assets).

¶ 61 In the context of this appeal, this distinction is important. As we have recognized above, cases belong to clients, not lawyers. *See, e.g.,* Colo. RPC 1.16 cmt. [4]. However, when an attorney fulfills his or her end of the bargain to a client's benefit in a contingent fee case, the client will be required to pay the attorney from the funds the attorney receives for the client. *See Mullens*, 65 P.3d at 998. Here, Maxwell is

obligated to pay the contingent fee, which we have concluded is an asset of the law firm.

¶ 62 We note that the allocation of firm assets generally must be based on their value at the time of dissolution. *Rasheed v. Mubarak,* 695 P.2d 754, 758 (Colo.App.1984). The value of an as yet unearned contingent fee, however, cannot be ascertained until work on the case is completed. Only then does the asset come into existence. *See Mullens,* 65 P.3d at 998; *see also Missouri Pac. R.R. Co.,* 292 F.2d at 419.

¶ 63 Here, the trial court characterized the Maxwell case as a firm asset and ascribed a value to it by employing a form of quantum meruit analysis, which was based on totaling the costs and hourly attorney fees recorded as of the date of dissolution. The court further ruled that the firm was entitled to recover this amount only if the case succeeded in generating a sufficient fee. In effect, the court placed all of the risk of the contingency on the firm, while depriving it of the potential benefit of a contingent fee. *See Brody v. Hellman,* 167 P.3d 192, 201 (Colo. App.2007)("The size of the contingent fee is designed to be greater than the reasonable value of the services, or the hours worked multiplied by the hourly rate, to reflect the fact that attorneys will realize no return for their investment of time and expenses in cases they lose.").

¶ 64 The trial court chose this approach to bring finality to the dissolution of the firm and avoid protracted litigation. However, this does not take into consideration the fact that an LLC does not terminate upon dissolution, but continues to exist until all pending business is complete. Relying on *Jewel's* reasoning, we recognize that "[t]o hold otherwise would permit a former [member] of a dissolved [law firm organized as an LLC] to breach the fiduciary duty not to take any action with respect to unfinished partnership business for personal gain." *Jewel,* 203 Cal. Rptr. at 18.

¶ 65 Arguing in support of the trial court's decision, LaFond relies heavily on *Welman v. Parker,* 328 S.W.3d 451, 455–58 (Mo.Ct.App. 2010). There, the Missouri Court of Appeals held that a dissolved firm was only entitled to quantum meruit for predissolution work.

328 S.W.3d at 457. Casting the attorney-client contract as an asset, the court held that

> [a dissolved] firm's contingent-fee contract is terminated by the client by entering into a subsequent contingent-fee contract with another law firm, even if that firm includes the withdrawn partner ... [and thus] the only asset of the dissolved law firm is its right to recover the reasonable value of its services rendered.

*Id.* at 455.

¶ 66 We reject *Welman's* reasoning for four reasons.

¶ 67 First, its facts are somewhat distinguishable. There, a client entered into a contingent fee agreement with a law firm. One of the firm's partners began to work on the case. The partner then left the firm. The client discharged the firm and retained the partner who left. Thus, unlike here, the client in *Welman* took affirmative steps to discharge the law firm before it hired the partner who left. *Welman* is, thus, more like a case in which a client has discharged an attorney who is subsequently awarded quantum meruit for the performance of services before the discharge, *see Olsen & Brown,* 889 P.2d at 677, than it is like this case.

¶ 68 Second, it is clearly the minority view.

¶ 69 Third, it conflates "contingent-fee cases and the attorney fees they garner." *Id.* As we have concluded above, although the case belongs to the client, under opinions such as *Mullens, Jewel, Fox,* and *Ellerby* a contingent fee earned by a partner who has departed a law firm is an asset that belongs to the law firm.

¶ 70 Fourth, although we recognize that dissolution of a law firm forces a client to choose someone other than the firm to represent him or her, *see* Formal Ethics Op. 116, this choice cannot be equated with a purely client-driven decision to terminate his or her relationship with a law firm that has not dissolved. In the former situation, the member attorneys decide to dissolve the law firm, the client remains with one of them, and the member attorneys retain certain responsibilities to each other after the firm dissolves.

In the latter situation, the client decides to take his or her case elsewhere. As the Illinois Appellate Court stated,

> [t]he clients of [a] partnership [are] free to be represented by any member of the dissolved partnership or by other attorneys of their choice. This right of the client is distinct from and does not conflict with the rights and duties of the partners between themselves with respect to profits from unfinished partnership business since, once the fee is paid to an attorney, it is of no concern to the client how the fee is distributed among the attorney and his partners.

*Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416; *see also Jewel,* 203 Cal.Rptr. at 17 ("[T] he right of a client to the attorney of one's choice and the rights and duties as between partners with respect to income from unfinished business are distinct and do not offend one another."); *Frates,* 167 So.2d at 80 (a client who opts to continue the representation through a member of the dissolved firm merely "manifest[s] [his or her] intention of retaining [the former member] to fulfill the continuing obligation of the firm").

5. An Attorney Who Winds Up a Contingent Fee Case on Behalf of a Dissolved Law Firm That Was an LLC Is Not Entitled to Compensation Beyond a Share of the Contingent Fee

¶ 71 To this point, we have relied on *similarities* between partnership and LLC statutes to inform our analysis. However, this analogy has limits, and we encounter one now: in this context, there is a significant *difference* between the two statutes.

¶ 72 Unlike the Colorado Uniform Partnership Act, the Colorado Limited Liability Company Act does not expressly authorize compensation to former members who wind up the LLC's business. When describing a partner's rights and duties, section 7–64–401(8), C.R.S.2011, states that "[a] partner is not entitled to remuneration for services performed for the partnership *except for reasonable compensation for services rendered in winding up the business of the partnership.*" (Emphasis supplied.) The section describing the reimbursement and indemnification of members of an LLC, section 7–80–407, C.R.S.2011, does not refer to compensation for "services rendered" in winding up the LLC's business.

¶ 73 The presence of such language in the partnership statute and the absence of corresponding language in the LLC statute caution us to proceed with care in order to avoid assuming the role of the legislature. *See Common Sense Alliance v. Davidson,* 995 P.2d 748, 753 (Colo.2000). This is because "[w]e do not add words to a statute." *Boulder County Bd. of Comm'rs v. HealthSouth Corp.,* 246 P.3d 948, 951 (Colo.2011).

¶ 74 And, because our LLC statute is modeled on the partnership statute, *see Water, Waste & Land,* 955 P.2d at 1000, we view the exclusion of such language from the LLC statute as an intentional legislative choice. *See People v. Seacrist,* 874 P.2d 438, 440 (Colo.App.1993) (court applies "the presumption that the General assembly was aware that qualifying language could be added to limit application of the statute ... and that it would have done so if such had been its intent"); *cf. People v. Hynes,* 917 P.2d 328, 330 (Colo.App.1996)("[T]he failure of the General Assembly to change or add language ... that would have extended the scope of [a] privilege to include the information and documents [that a supreme court case had previously concluded were excluded from the privilege's coverage] is compelling evidence that the General Assembly did not intend [the information and documents] to come under the privilege....").

¶ 75 Further, cases we have relied upon in reaching our result reject the concept of awarding an attorney additional funds for winding up a contingent fee case. For example, *Jewel* states:

> At first glance, strict application of the rule against extra compensation might appear to have unjust results (e.g., where a former partner obtains a highly remunerative case just before dissolution, and nearly all work is performed after dissolution). But undue hardship should be prevented by two basic fiduciary duties owed between the former partners. First, each former partner has a duty to wind up and complete the unfinished business of the dis-

solved partnership.... Second, no former partner may take any action with respect to unfinished business which leads to purely personal gain.... If there is any disproportionate burden of completing unfinished business here, it results from the parties' failure to have entered into a partnership agreement which could have assured such a result would not occur. The former partners must bear the consequences of their failure to provide for dissolution in a partnership agreement.

*Jewel,* 203 Cal.Rptr. at 18–19. Other decisions have reached similar results. *See Suffrin v. Hosier,* 896 F.Supp. 766, 769–70 (N.D.Ill.1995); *Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 417.

### III. Conclusion

¶ 76 We conclude that LaFond had a duty to wind up unfinished business of the dissolved law firm, including continuing to represent Maxwell. The contingent fee allocated to LaFond in the Maxwell case is the law firm's asset. Because LaFond and Sweeney orally agreed to share equally in all the firm's profits, without regard to who brought cases into the office or who did work on them, each is entitled to an equal share of the contingent fee obtained by LaFond in the Maxwell case.

¶ 77 Therefore, we reverse the judgment and remand to the trial court for further proceedings. On remand, the trial court shall:

1. Determine whether LaFond and Sweeney have reached an agreement concerning the division of part or all of the allocation of the contingent fee to LaFond based upon the settlement of the Maxwell case.

2. If there is no agreement:

   a. Determine the amount of the entire contingent fee that was allocated to LaFond as a result of the settlement in Maxwell case;

   b. Divide the entire contingent fee equally; and

   c. Award the resulting one-half shares to LaFond and Sweeney, respectively.

¶ 78 If there is an agreement, the court shall determine how its conditions affect the distribution described in paragraph 2 of these remand instructions. The court must then enter an order making awards to LaFond and Sweeney that (1) incorporates the conditions of their agreement; and (2) to the greatest extent reasonably possible subject to those conditions, implements the division of the entire contingent fee allocated to LaFond as a result of the settlement, as described in paragraph 2.

¶ 79 The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge LOEB and Judge LICHTENSTEIN concur.